NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

CHRISTOPHER BOOZER, *Petitioner/Appellant*,

*v.*

LESLIE BOOZER, *Respondent/Appellee*.

No. 1 CA-CV 24-0238 FC

FILED 10-17-2024

Appeal from the Superior Court in Maricopa County
No. FC2014-096579
The Honorable Quintin H. Cushner, Judge

**AFFIRMED**

COUNSEL

Christopher Boozer, Goodyear
*Petitioner/Appellant*

Leslie Boozer, Laveen
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

---

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

¶1        In 2019, the superior court entered orders (the "2019 orders") awarding Leslie Boozer ("Mother") sole legal decision-making authority ("LDM") for the children she shares with Christopher Boozer ("Father") and designating her the children's primary residential parent. Father petitioned to modify the 2019 orders, asking that he be awarded sole LDM and be designated the children's primary residential parent. The court denied Father's requests, and he now appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the record in the light most favorable to upholding the superior court's decision. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005). Mother and Father married in 2006 and have two children in common: R.B., born in 2008, and X.B., born in 2010. Father petitioned for dissolution of marriage in 2014. In 2016, the court entered a dissolution decree which, as relevant here, awarded the parties joint LDM and equal parenting time.

¶3        The record reflects that, since entry of the dissolution decree, the parties have had an acrimonious relationship, with each party seeking, at various times, to modify the LDM and parenting time provisions of the dissolution decree. In 2017, the court reaffirmed the decree's award of joint LDM but limited Father's parenting time due to his lack of stable housing.

¶4        In early 2019, Father petitioned to modify the orders entered in 2017, asking that he be awarded sole LDM and designated the children's primary residential parent. In support of his request, Father asserted that "[t]he children have experienced abuse at the hands of" Mother and that Mother had "repeatedly perjured herself" in her testimony about "[F]ather's actions and her actions as they relate to . . . our children." Mother then filed her own petition to modify asking that she be awarded sole LDM, asserting, *inter alia*, that Father "has committed domestic violence against"

her by being "verbally and emotionally abusive toward her." She further asked that Father be granted parenting time only on alternate weekends during the school year (with more extended parenting time during the summer), explaining that Father's unstable living arrangements and lack of support for their medical needs, education, and extracurricular activities has caused the children "anxiety" and harmed their "emotional health."

¶5         After an evidentiary hearing, Judge Ponce issued the 2019 orders setting forth her findings, *inter alia*, that "Father has engaged in domestic violence against Mother" and Mother obtained "an order of protection against [him]." Judge Ponce further found that "Mother provided credible testimony that Father has not permitted the children to participate in extracurricular activities during his parenting time, nor does he take [them] to medical or other appointments during his parenting time." Judge Ponce awarded Mother sole LDM and designated her the children's primary residential parent.

¶6         Father filed an untimely notice of appeal, and the appeal was dismissed for lack of jurisdiction. *See* ARCAP 9(a); *see also In re Marriage of Thorn*, 235 Ariz. 216, 218, ¶ 5 (App. 2014) ("The failure to file a notice within thirty days deprives the appellate court of jurisdiction except to dismiss the attempted appeal.").

¶7         Shortly thereafter, Father filed another petition to modify, asking that he be awarded sole LDM and that Mother be granted no parenting time at all. Insisting that Mother "intentionally lies to the courts," Father complained that the evidence he presented "was ignored" when the court entered the 2019 orders.

¶8         Because Father's petition was filed sooner than statutorily allowed, the court dismissed it. *See* A.R.S. § 25-411(A) ("A person shall not make a motion to modify a legal decision-making or parenting time decree earlier than one year after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may seriously endanger the child's physical, mental, moral or emotional health.").

¶9         In 2022, Father again petitioned to modify the 2019 orders, seeking sole LDM and, this time, asking that Mother's parenting time be supervised. In support of his request, Father alleged that he "never assaulted" Mother and that Mother's "perjury has caused [the] children to lose significant time with a loving father who has continued to put their best interest first."

¶10 Before a hearing on Father's petition was held, Mother moved for an order suspending Father's parenting time with R.B., alleging that Father and R.B. had engaged in a physical altercation that resulted in R.B. being arrested "because Father showed visible scratches on his arm." The court temporarily suspended Father's parenting time with R.B. and set an evidentiary hearing on the matter. After the hearing, the court found "no evidence" that Father "abuse[d] or neglect[ed]" R.B. The court nonetheless found that Father's relationship with R.B. was "strained," and so ordered that Father's parenting time with R.B. remain suspended for "a 'cooling off' period" pending the evidentiary hearing on Father's petition.

¶11 After the evidentiary hearing on the petition in January 2024, Judge Cushner issued a ruling stating in part that "Mother alleges that Father committed domestic violence against her in 2019," and that "credible evidence supports a finding that Father has committed domestic violence against Mother." Judge Cushner went on to determine, however, that although "[a]ny domestic violence is serious and cause for concern," the domestic violence here was not "significant" as that term is used in A.R.S. § 25-403.03(A). As a result, Judge Cushner determined that Father was not statutorily precluded from seeking his requested relief. *See* A.R.S. 25-403.03(A) (providing in part that "joint legal decision-making shall not be awarded if the court" finds "the existence of significant domestic violence" or "a significant history of domestic violence").

¶12 Judge Cushner nonetheless determined that Father had failed to justify his requested modification of the 2019 orders. In so holding, Judge Cushner found that Father's relationship with R.B. was "strained," as evidenced by R.B.'s arrest following an altercation with Father, and that Father had not exercised parenting time with either child in over six months. Accordingly, Judge Cushner affirmed the prior award to Mother of sole LDM "at this time . . . while Father reestablishes [*sic*] his relationship with the children." Judge Cushner ordered a "phased parenting plan" that "initially" awarded Father non-overnight parenting time for several weeks, followed by overnight parenting time in gradually increasing amounts. Such a schedule, Judge Cushner concluded, would serve the children's best interests by allowing Father to "reengage [*sic*] and stabilize his relationship with [them]." Finally, Judge Cushner ordered Father to pay child support of $66 per month based on its determination of the parties' incomes and the parenting time schedule.

¶13 Father timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

**¶14**      Father argues that the court erred in denying his petition to modify the October 2019 orders, asserting that the superior court's "decision [was] not based on facts or truthful testimony." Mother did not file an answering brief. While we may regard a party's failure to file an answering brief as a confession of error, "we are not required to do so." *In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 2 (App. 2002). In our discretion, we decline to do so here because the welfare of children is at stake. *See id.*

**¶15**      Orders for LDM or parenting time are determined in accordance with the child's best interests. *See* A.R.S. § 25-403(A) (providing that LDM and parenting time shall be determined, "either originally or on petition for modification, in accordance with the best interests of the child"); *see also J.F. v. Como*, 253 Ariz. 400, 403, ¶ 14 (App. 2022) ("The dispositive factor in all child custody disputes is the child's best interests[.]"). In determining a child's best interests, a court must consider the factors set forth in A.R.S. § 25-403(A), including, *inter alia*, "[t]he past, present and potential future relationship between the parent and child," "[t]he child's adjustment to home, school and community," and "[w]hether there has been domestic violence." A.R.S. § 25-403(A)(1), (3), (8).

**¶16**      A party may request a modification of LDM or parenting time by filing a petition that satisfies the requirements of A.R.S. § 25-411. In considering a request to modify LDM or parenting time, the court "must initially determine whether a change of circumstances has occurred" since the entry of the current order. *Engstrom v. McCarthy*, 243 Ariz. 469, 472, ¶ 10 (App. 2018) (citation omitted). "Only if [the court] finds such a change in circumstances may it . . . proceed to determine whether [a modification] will be in the best interests of the child." *Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (citation omitted).

**¶17**      Father asserts that a modification of the 2019 orders was warranted in part because there is "no truth" to Judge Ponce's "finding of domestic violence in 2019." According to Father, he denied Mother's allegations of domestic violence, but Judge Ponce "ignored my testimony." He "attempted to file an appeal" from Judge Ponce's ruling, he states, but "missed the deadline." Likewise, he asserts, Judge Cushner's finding of domestic violence was "not based on facts or truthful testimony." "I have never committed nor been convicted of Domestic Violence," Father asserts, noting that a "Level One Fingerprint Clearance Card . . . was awarded to me" which "shows there has not been a finding of domestic violence." Complaining that "the courts have been unwilling/unable to see past

[Mother's] lies which has led to significant trauma for our children," Father asks this Court to award him "full legal decision making, parenting time, and child support."

**¶18** A petition to modify cannot be used as a vehicle to seek reconsideration of issues already addressed and resolved in a final decree. *See Galbraith v. Galbraith*, 88 Ariz. 358, 361 (1960) (noting that "a showing of changed circumstances affecting the welfare of the child" is "a condition precedent to the modification of the custody provisions" of "a divorce judgment"). When Father failed to timely appeal the 2019 orders, they became final. *See Pettit v. Pettit*, 218 Ariz. 529, 530, ¶ 2 (App. 2008). Father is therefore entitled to no relief on his challenge to Judge Ponce's 2019 finding of domestic violence.

**¶19** To the extent Father challenges Judge Cushner's finding that "credible evidence supports a finding that Father has committed domestic violence against Mother," he is, again, entitled to no relief. Mother testified at the January 2024 hearing that Father committed an act of domestic violence against her in 2019. The court found Mother's testimony credible, and her testimony alone was sufficient to support a finding of domestic violence. *See* A.R.S. § 25-403.03(C) (providing that domestic violence may be established, *inter alia*, by "[w]itness testimony"); *cf. State v. Montano*, 121 Ariz. 147, 149 (App. 1978) ("[O]ne witness, if relevant and credible, is sufficient to support a conviction."). Further, Father has submitted only a partial transcript of the January 2024 hearing. We presume that the omitted portions of the transcript support the court's factual findings. *Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) (providing that because an appellant "is responsible for making certain the record on appeal contains all transcripts or other documents necessary for [the appellate court] to consider the issues raised on appeal[,]" the appellate court will "assume" that missing portions of the record "would support the [trial] court's findings and conclusions"). Father has established no basis for this court to disturb the superior court's finding that Father committed domestic violence against Mother.

**¶20** Father's contention that his level 1 fingerprint clearance card refutes the court's finding of domestic violence is simply incorrect.[1] A level 1 fingerprint clearance card confirms that the holder has no convictions or

---

[1] It does not appear from the record that Father's fingerprint clearance card was ever offered as an exhibit at the 2024 evidentiary hearing. Since Mother has not denied that Father has such a card, however, we assume, for purposes of this appeal, that he does.

charges pending for any statutorily-enumerated criminal offense. A.R.S. § 41-1758.07(A) (providing that the Arizona Department of Public Safety "shall issue . . . a level 1 fingerprint clearance card" after verifying that applicant's criminal history record does not reflect convictions or pending charges for any enumerated offenses). For purposes of LDM and parenting time determinations, however, a court may find that a parent committed domestic violence even if the parent's conduct did not result in an arrest or conviction. *See* A.R.S. § 25-403.03(C) (providing that, when determining whether domestic violence occurred for purposes of awarding LDM, the court is not limited to "[p]olice reports" and court records but may consider "[w]itness testimony" as well). Father's lack of a criminal history does not, by itself, refute the superior court's finding that he committed domestic violence against Mother.

¶21    Arguing, in conclusory terms, that the court's ruling on his petition "is so far removed from what the evidence actually shows as to render [the ruling] improper and subject to reversal," Father asks us "to weigh the testimony and evidence presented." In other words, Father asks us to re-examine the evidence already presented and come to a conclusion different from that which the superior court reached. We will not do this. *See, e.g.*, *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) ("Our duty on review does not include re-weighing conflicting evidence or redetermining the preponderance of the evidence.").

¶22    Moreover, a review of the court's lengthy and detailed ruling on Father's petition makes clear that the court's decision was not based on its determination that Father had committed an act of domestic violence. On the contrary, the court expressly determined that the domestic violence Father committed was not "significant" within the meaning of A.R.S. § 25-403.03(A) and so did not preclude him from seeking modification of the 2019 orders. The court based its decision to deny Father's requested modification on its detailed analysis of the factors set forth in A.R.S. § 25-403(A). Among other things, the court found that Father had exercised no parenting time with either child in over six months and that his relationship with them was in need of rebuilding before further modifications to the 2019 orders could be considered. In the absence of a complete transcript of the January 2024 evidentiary hearing, we presume that the evidence supports these findings. *See Baker*, 183 Ariz. at 73. Indeed, Father does not challenge, or even address, these findings in his briefing on appeal. Because the court's extensive and thoughtful ruling shows that it considered all relevant factors, Father has shown no abuse of discretion in the court's determination that the children's best interests would be served if Mother

retained sole LDM while Father rebuilt his relationship with the children through a "phased parenting plan."

¶23 Father also asks this court to modify the child support award, asserting, in a single sentence and without explanation, that Mother "has repeatedly lied about her income." Because Father has failed to develop this conclusory argument, we deem it waived. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491, ¶ 6 n. 2 (App. 2007).

**CONCLUSION**

¶24 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AGFV